IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA S., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:20-cv-2574-B-BN |
| | § | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Debra S. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be reversed.

**Background**

Plaintiff alleges that she is disabled due to a variety of ailments, including Meniere's disease, fatigue, vertigo, hearing loss, and nausea with vomiting. After her application for disability insurance benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on September 16, 2019. *See* Dkt. No. 16-1 at 27-46. At the time of the hearing, Plaintiff was 63 years old. She has a graduate degree and past work experience as a dentist. Plaintiff has not engaged in substantial gainful activity since June 1, 2017.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See id.* at 14-21. Although the medical evidence established that Plaintiff suffered from Meniere's disease, the ALJ concluded that the severity of that impairment did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform her past relevant work as a dentist. Alternatively, the ALJ stated that given her age, education, and exertional capacity for light work, Plaintiff could perform other jobs in the national economy.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff contends the hearing decision is not supported by substantial evidence because (1) the ALJ failed to consider all of Plaintiff's functional limitations in determining her residual functional capacity, and (2) the ALJ alternatively found that Plaintiff could perform other jobs in the national economy but failed to cite examples of those jobs or to consider the limiting effects of Plaintiff's impairments in determining that she can perform other work.

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a

whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued

period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining

physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

**Analysis**

Among the arguments Plaintiff makes is a single ground that compels remand – the ALJ failed to consider all limiting effects of Plaintiff's treatment for her impairment and to assess their impact on her ability to return to her past work as a dentist.[1]

[1] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.

"It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "The ALJ makes an RFC determination based on all the relevant medical and other evidence in the record," *Gonzales v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *9 (N.D. Tex. Jan. 11, 2016) (citing 20 C.F.R. § 404.1545(a)(1)), and "is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Fontenot*, 661 F. App'x at 277 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)). "Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing. The absence of such a statement, however, does not, in itself, make the record incomplete." *Ripley*, 67 F.3d at 557 (citing 20 C.F.R. § 404.1513(b)(6)). "[W]here no medical statement has been provided, [the Court's] inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id.*; *accord Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (citation omitted).

The determination of a residual functional capacity is the ALJ's "sole responsibility," *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012), and the ALJ considers all relevant medical and other evidence in making that determination, *see* 20 C.F.R. § 404.1545(a)(3). Such an assessment should account for any limitations or restrictions caused by side effects from needed medications. *See, e.g., Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (citing regulations and stating, "the Commissioner

is required to consider the type, dosage, effectiveness, and side effects of any medication the claimant takes" (quotations marks and brackets omitted)); *Ramos v. Saul*, 5-19-CV-00897-RBF, 2020 WL 5757490, at *3 (W.D. Tex. Sept. 25, 2020) (same); Security Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (Jul. 2, 1996); 20 C.F.R. § 416.929(c)(3)(iv).

Here, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but she can never balance or climb ladders, ropes, or scaffolds and must avoid hazards such as unprotected heights and dangerous moving mechanical parts. *See* Dkt. No. 16-1 at 17. The ALJ imposed those limitations as safety precautions to accommodate for vertigo. *See id*. at 19. Based on this RFC, the ALJ found Plaintiff could return to her past work as a dentist.

Plaintiff complains that the ALJ's RFC assessment failed to sufficiently account for all symptoms of Meniere's disease she experiences and the significant side effects of medication she takes to alleviate those symptoms. The undersigned agrees.

Plaintiff owned and was employed by her own dental practice from June 1981 to May 2017. At the administrative hearing, Plaintiff testified that she could not work because of Meniere's disease. *See* Dkt. No. 16-1 at 32. Meniere's disease is an inner ear condition that can cause vertigo, tinnitus, hearing loss that comes and goes and may eventually become permanent, and a feeling of fullness or pressure in the ear. *See* Dkt. No. 18 at 3 n.1.

Plaintiff saw Fred Owens, M.D. with Owens Ear Center on October 15, 2013, complaining of vertigo, which started in January 2012 and increased in frequency

and severity over time. *See* Dkt. No. 1-6 at 235. She reported sudden onset spinning with nausea and vomiting that would last three to four hours and a feeling of fogginess the next day. *See id.* Other associated symptoms-all in the left ear-were moderate hearing loss, a feeling of fullness and tinnitus. *See id*. For relief, she would hold very still and lie down. Dr. Owens diagnosed Meniere's disease, sensory hearing loss and tinnitus. He prescribed medications, including Valium, to treat her symptoms. *See id*. at 237-38. He told her she would need to take Valium for the rest of her life to control the vertigo. *See id.* at 34, 237-38. At her one-month follow-up, Plaintiff reported improved hearing, with fluctuation, and tinnitus occurring only occasionally. *See id*. at 231. Three months later, she reported no severe spells or falls and improvement with associated symptoms. Dr. Owens continued her medications. *See id*.

Plaintiff also saw William Spurlock, M.D., with Renewed Vitality. On April 10, 2017, she reported feeling exhausted all the time, nausea, muscle pain and dizziness. *See id*. at 284-86. A January 22, 2018 medical note indicated that Plaintiff had stopped an HCG diet because of Meniere's disease, but she was feeling better and wanted to start it again. *See id*. at 261. A July 2018 medical note indicated Plaintiff requested a refill of Valium because, even though she had not needed it lately, it was the only medication that stopped the vertigo brought on by Meniere's disease. *See id*. at 325. Plaintiff continued to be and was being treated by Dr. Spurlock at the time of hearing. *See id*. at 402.

Plaintiff was evaluated by Yoav Hahn, M.D., with Dallas Ear Institute on July 17, 2017. *See id.* at 35, 334-46. The assessment noted active cochleovestibular Meniere's disease of the left ear and sensory neural hearing loss. *See id.* at 335. Her hearing was noted to be poor in the left ear but appeared stable. *See id.* at 336. Dr. Hahn found that Plaintiff's symptoms were consistent with left Meniere's disease, which was having a significant effect on her lifestyle and daily functioning. Specifically, the uncertainty of when another episode would occur, the constant imbalance she feels and decreased cognition resulting from chronic Valium use were impacting her quality of life and ability to function. *See id.*

Dr. Spurlock provided letters of disability on Plaintiff's behalf dated April 13, 2016 and March 30, 2017. *See id.* at 349, 352. Dr. Spurlock explained that Plaintiff was unable to work due to the progressively worsening symptoms of Meniere's disease, which had been treated with Valium and the Valium use caused great sedation. He described her symptoms as extreme dizziness, loss of balance, falling when walking and moving, nausea and vomiting, visual disturbances with nystagmus and vertigo with nausea, shooting pain in both ears, paresthesia of the scalp at times, cognitive disfunction with inability to perform tasks appropriately and inability to complete tasks properly due to distraction, mostly from nausea. He also noted that Plaintiff had experienced situations where she fell during a dental procedure and could not complete the procedure. Due to these levels of incompetency, Dr. Spurlock concluded that Plaintiff could no longer perform the duties of her profession. He put

her on complete disability and concluded that Plaintiff's Meniere's disease was putting both Plaintiff and her patients at risk.

Dr. Spurlock also completed two physician's statements dated August 22, 2017 and September 26, 2018. *See id*. at 347-48, 466. In both he noted diagnoses including Meniere's disease and hearing issues in the left ear. He stated that Plaintiff suffered from extreme dizziness, loss of balance, vomiting, nausea, visual disturbances, brain fog, equilibrium issues, fatigue, and hearing loss in the left ear. He stated Plaintiff was capable of all physical activities within her limitations considering safety issues and she cannot tolerate high frequency noises typical of high-speed drills used in dentistry. He concluded Plaintiff should not be working as a dentist because of lack of ability to focus properly and safety issues.

In making the RFC determination, the ALJ adopted the findings of State agency non-examining physicians who reviewed the medical record to make disability determinations. *See id*. at 19, 48-56, 58-68. On reconsideration, the consultant found Plaintiff had no medically determinable impairment that would account for Plaintiff's allegations of brain fog and difficulty in concentration, following instructions and memory. *See id*. at 62.

But the ALJ failed to consider whether Plaintiff's symptoms, and especially her cognitive symptoms, were side effects of medication Plaintiff takes to alleviate vertigo, one of the symptoms of Meniere's disease, and how they impact her ability to work as a dentist. For example, an examining physician stated that Plaintiff suffered from decreased cognition resulting from chronic Valium use, which impacted her

ability to function, and a treating physician stated that Plaintiff's Valium used caused extreme drowsiness. And Plaintiff was prejudiced because, had the ALJ done so, the outcome may have been different.

**Recommendation**

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 9, 2021

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE